## Case No. 6,705.

### The HORNET.

[2 Abb. U. S. 35;[1] 11 Int. Rev. Rec. 6.]

District Court, D. North Carolina. 1870.

SCOPE OF JUDICIAL POWER—QUESTIONS AS TO EXISTENCE OF FOREIGN GOVERNMENT.

1. When a question arises, in judicial proceedings, relative to the existence or validity of an organization claiming to be the lawful government of a foreign country, the courts of the United States are bound by the decision of the executive power. Such a question is political, and not judicial, in its nature.

2. When a civil war is pending in a foreign country, between a portion of the people who adhere to a long established government, and another portion who assert a new government,

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

the courts of the United States cannot recognize such new government, or admit it or its agents or representatives to a standing as parties in judicial proceedings, until the executive power has publicly recognized such new government.

Application to interpose a claim, in admiralty. The steamer Hornet was seized upon a libel of information, founded upon a charge of violating the neutrality laws. J. Morales Lemus, as agent of the so-called "Republic of Cuba," now applied to be allowed to intervene and interpose a claim and contest the suit. The only question now made was as to the propriety of allowing such agent to claim.

BROOKS, District Judge. The question submitted to the court is—can this court recognize as existing, any government or organized body of people, or element known as the "Republic of Cuba," to the extent of allowing that as a body politic, or government to come through an agent into court, and be admitted as claimant of the property libeled in this cause?

The capacity of this struggling element in Cuba, styling themselves the "Republic of Cuba," to take and hold property is not a question for consideration. But it is now simply for this court to declare to what extent it may properly go (if to any extent), in declaring how far any revolutionary element or people have succeeded in their efforts to separate and free themselves from any established and acknowledged government.

I feel that I have been aided materially in coming to a correct conclusion upon this question, by the very clear and able arguments of the counsel who addressed the court—both for the United States and for the individual who styles himself the "agent of the Republic of Cuba;" yet I am embarrassed by the importance of this question, in its connection with this cause. Were I satisfied that my opinion would be revised by the supreme court, and be by that body corrected if wrong, I would announce the conclusion to which I have come with less reluctance than I do.

It was contended by Mr. Phelps, the counsel who submitted the argument on the part of the United States—that this court would exceed its power in recognizing to any extent, or for any purpose—the existence of any mere revolutionary body, such as that styling itself the "Republic of Cuba," in the absence of any act, resolution, proclamation of the legislative or executive department of our government, declaring or admitting to any extent, the existence of such a government. That there is no authority to show that such power was designed to be allowed the courts, or was ever exercised by the courts of the United States, but on the contrary there is abundant and conclusive authority—both of our circuit and supreme court, to show that they have not only declined to claim or exercise such power—but declared it to exist with and to have been exercised by the political departments of the

government alone. That a power or government must necessarily be recognized to have existence before they can be admitted as claimants to defend or be in any way heard in the court.

Other objections were urged by the counsel to the sufficiency of the evidence offered by J. Morales Lemus, to show that he was authorized to represent and claim for the Republic of Cuba. This, like the question of title, the court regards as not now necessary to be considered.

I listened with care and much interest to the argument of the learned counsel who addressed the court in behalf of the party who asks to be admitted as agent, for the purpose of interposing a claim, and to the authorities read and commented upon by him. I have examined the authorities cited on both sides, and considered these authorities and the arguments with care, and have been forced to the conclusion that this question is with the United States, and I must so declare.

I confess to some degree of hesitancy in so declaring, because, partially considered, it may seem as if it recognized to some extent, a right in the strong to deny justice to the weak. But, if anything should be yielded for such a consideration, it would be altogether unjustifiable on my part. Less defensible for me would such a course be for the reason that I entertain so clearly the opinion that courts have no right to consider any question of law submitted to them, in a policy view. Courts should construe the law—ascertain, and declare the law, as it is, without reference to any opinion of the judge, as to what the law should be. Though no case parallel to this case has been cited, yet cases have been referred to and commented upon by the counsel for the government, which, in my opinion, conclusively settle this question.

I will first refer to the case of U. S. v. Palmer, 3 Wheat. [16 U. S.] 610. This was an indictment against the defendant and others, under the act of congress, for robbery upon the high seas—in the circuit court for the district of Massachusetts. The judges were not agreed, and certified eleven questions for the opinion of the supreme court. That eminent judge, Chief Justice Marshall, delivered the opinion of the court. I will only refer to the remarks of the learned chief justice upon the tenth question so certified.

The question was certified in the following language. "Whether any colony, district, or people, who have revolted from their native allegiance, and have assumed upon themselves the exercise of independent and sovereign power, can be deemed in any court of the United States an independent or sovereign nation or government, until they have been acknowledged as such by the government of the United States; and whether such acknowledgment can be proved in a court of the United States otherwise than by some act, resolution, or statute of congress, or by some public proclamation or other pub-

lic act of the executive authority of the United States, directly containing or announcing such acknowledgment, or by publicly receiving or acknowledging an ambassador or other public minister from such colony, district, or people; and whether such acknowledgment can be proved by mere inference from the private acts or private instructions of the executive of the United States, where no public acknowledgment has ever been made; and whether the courts of the states are bound judicially to take notice of the existing relations of the states as to foreign states and sovereignties, their colonies and dependencies."

That great judge and the supreme court, declare as follows: "Those questions which respect the rights of a foreign empire, which asserts and is contending for its independence, and the conduct which must be observed by the courts of the Union towards the subjects of such sections of an empire who may be brought before the tribunals of this country are equally difficult and delicate. As it is understood that the construction which has been given to the acts of congress will render a particular answer unnecessary, the court will only observe that such questions are generally rather political than legal in their character. They belong more properly to those who can declare what the law shall be; who can place the nation in such a position with respect to foreign powers as to their judgment may seem wise; to whom are entrusted all its foreign relations; than to that tribunal whose power as well as duty is confined to the application of the rule which the legislature may prescribe for it. In such contests the nation may engage itself with one party or the other—may observe absolute neutrality—may recognize the new state absolutely, or may make a limited recognition of it. The proceedings in courts must depend so entirely on the course of the government that it is difficult to give a precise answer to questions which do not refer to a particular nation. This court is of opinion that, when a civil war rages in a foreign nation—one part of which separates itself from the old established government and erects itself into a distinct government—the courts of the Union must view such newly constituted government as it is viewed by the legislative and executive departments of the government of the United States."

Then the same learned judge, in the case of The Divina Pastora, 4 Wheat. [17 U. S.] 52, decided at the next term of the supreme court, says that "the decision at the last term, in U. S. v. Palmer [supra], establishes the principle that the government of the Union having recognized the existence of a civil war between Spain and her colonies, but remaining neutral, the courts of the Union are bound to consider as lawful, those acts which war authorizes, and which the new government in South America may di-

rect against their enemy." Hence I conclude that for the reason that the government of the United States had recognized the existence of a civil war between Spain and her colonies, the courts were forbidden to say that the act of capturing The Divina Pastora was unlawful. That the court could not say, after such an acknowledgment, if the capturing ship had come within the jurisdiction of the United States, that she was a piratical vessel, and treat her as such. That the effect of this acknowledgment was to accord to the new power belligerent rights, so far as the United States were concerned; one of which is to grant letters of marque and reprisal, one of the important advantages arising from which (to such as act under them), is exemption from the penalty for piracy. This is but saying to such a people that we see and understand that you are struggling to separate from the mother country.

That whether a revolted colony is to be treated as a sovereign state, even de facto, is a political question, and to be decided by the government, and not the court, has been decided in effect in several other cases than those before mentioned, as in Kennett v. Chambers, 14 How. [55 U. S.] 38; Clark v. U. S. [Case No. 2,838].

And in the great case of Luther v. Borden [7 How. (48 U. S.) 1], than in the argument of which the great American constitutional lawyer rarely if ever displayed more learning, the supreme court unmistakably declared, against the view urged by Mr. Webster, that the federal courts have no jurisdiction of the question whether a government, organized in a state, is the duly constituted government in the state. That is a question which belongs to the political, not to the judicial power. In that case any disposition of that question could not have disturbed our relation with any established foreign power. No power with whom the United States was at peace or to whom our government was solemnly pledged to a just and clearly prescribed course, as by our neutrality acts, could or would have complained of a contrary decision in that case—and still that was held not to be a question with the court.

How much the more reason in the conclusion to which our courts have come, and on which they have acted in relation to this subject, where even by possibility their action might involve our country in war with foreign powers. There are other cases to which I might refer establishing in my view this principle.

I do not deem it necessary to refer to the other cases cited by the counsel for the government. It cannot be intended that such power should be vested in the courts. It would be a power dangerous to our government to be so vested, and one which judges could not so well exercise as congress or the executive.

If the courts have the power to do any act which would in effect accord to this new government advantages, I do not see what limits there would be to the benefits which they might so confer, and the result might be that our nation would be involved in a war from the action of one judge, when the people and those who represent the people were disposed to peace.

If the courts, before the political departments had spoken, have the right to take one step in this direction, I do not see any limit to their power, short of declaring perfect freedom and independence. What act has been performed, what resolution, declaration, or proclamation has been made by congress or the executive, indicating an intention on their part to acknowledge, at any time or to any extent, the existence of the Republic of Cuba?

This court knows of no such act, and nothing of that character has been shown or alleged by counsel. Then this court cannot know of the existence of such a government. Such knowledge is essential to the admission of this agent, as claimant for his government.

My time for the examination of this question has not been so ample as I could have desired.

Application denied.